IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:14-cv-356-WHA |
| | ) | |
| NINETY SIX THOUSAND THREE | ) | (WO) |
| HUNDRED SEVENTY ($96,370.00) | ) | |
| DOLLARS IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on the United States of America's ("the Government") Motion for Summary Judgment (Doc. # 30), Claimant Arnold Grant's ("Claimant") Response and Cross Motion for Summary Judgment (Doc. # 32), and the Government's Reply (Doc. # 34). This is a civil forfeiture case in which the Claimant asserts a claim to the Defendant currency, which was seized from his son in a traffic stop in connection with his son's arrest for possession of marijuana. The Government alleges that the Claimant has failed to establish he has standing sufficient to challenge the forfeiture, while the Claimant asserts both that he has standing and that the forfeiture is invalid because the government has not shown probable cause for the forfeiture.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. For the reasons to be discussed, the court concludes that the Claimant has not satisfied his burden to establish standing, and therefore the Government's Motion for Summary Judgment is due to be GRANTED. The Claimant's Cross Motion for Summary Judgment is due to be DENIED.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A)–(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed:

The Claimant's son, Willie Grant, was stopped by Deputy Rodney Arwood ("Arwood") while driving on Interstate 85 northbound in Chambers County, Alabama, on December 17, 2013. Arwood stopped Willie Grant for following too closely. Arwood initiated a search of the vehicle because he detected the odor of marijuana. In the trunk, Arwood discovered a suitcase with cash stored in its lining. After the suitcase was taken away from the car, a drug detecting canine alerted on it. Arwood also found a small amount of marijuana in the front console and seat of the vehicle. He arrested Willie Grant for possession of marijuana. Arwood transported both Willie Grant and the cash to the Valley Police Department. There, the cash was released to DEA Special Agent Marbrae Wilson. The cash totaled $96,370. Willie Grant was later sent to the Chambers County Detention Facility.

On February 14, 2014, the Claimant sent a letter to the DEA, asserting his claim to the Defendant currency (Doc. # 8). The Government filed its Verified Complaint for Forfeiture in Rem (Doc. # 1) on May 15, 2014. The Claimant filed an Amended Claim on June 29, 2014, stating that in 2011, he "invested $150,000 in [his] son Willie Adam Grant for personal reasons." (Doc. # 10 at 6.) After this court denied his Motion to Dismiss for Lack of Jurisdiction (Doc. # 20), the Claimant filed an Answer on November 7, 2014 (Doc. # 22). The Government's instant Motion for Summary Judgment followed on June 23, 2015.

## IV. DISCUSSION

The Government's Motion for Summary Judgment alleges that this case can be decided as a matter of law because the evidence shows that the Claimant cannot establish by a preponderance of the evidence that he has proper standing. The Government further argues that standing is a threshold issue, and the court must consider it before addressing any of the merits of the case. The Claimant has responded that he does, in fact, have standing, and that his Cross Motion for Summary Judgment is due to be granted because the Government has not provided sufficient evidence to support its forfeiture complaint.

The government is correct that standing is a threshold issue. Therefore, the court must first consider whether the Claimant has standing to contest the forfeiture. Because the court concludes, for the reasons set forth below, that the Claimant has not established standing, it need not, or more accurately cannot, consider the merits of the Claimant's other arguments.

Two types of standing are involved in a forfeiture case such as this one: Article III standing and statutory standing. *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). "[I]n order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *Id.* (citations omitted). Specifically, the claimant must show "an ownership or possessory interest in the property seized." *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439 (11th Cir. 1984). Unless the Claimant has Article III standing, this court "lack[s] the jurisdiction to consider [his] claim," including his claim "that the government did not have the requisite probable cause to seize the defendant property." *$38,000.00 in U.S. Currency*, 816 F.2d at 1543. "The burden of establishing standing in forfeiture proceedings is on the claimant." *Five*

4

*Hundred Thousand Dollars*, 730 F.2d at 1439.  The evidentiary standard for this showing of standing by the claimant is by a preponderance of the evidence.  Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(8)(c)(ii)(B).

      The Government argues that the Claimant lacks Article III standing in this case.  Specifically, the Government asserts that under the relevant standards for standing in this context, the Claimant must show more than bare legal title, because "[p]ossession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture."  *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Fort Lauderdale*, 803 F.2d 625, 630 (11th Cir. 1986).  According to the Government, "[t]he answers [the Claimant] gave during his deposition make clear that he exercised no dominion or control over the defendant currency once it was in his son's possession."  (Doc. # 30 at 8.)  Specifically, the Government argues that the Claimant's deposition showed that he equivocated as to whether he retained control over the currency once he gave it to his son (particularly regarding whether he expected to be repaid), and that he had no way of proving the currency seized from Willie Grant's vehicle was the same as the currency that the Claimant gave him years before.

      The majority of the Claimant's Response and Cross Motion for Summary Judgment is devoted to matters other than standing—such as whether the Government has established probable cause—that the court cannot consider before determining whether standing exists.  As to standing specifically, the Claimant asserts that he has met his burden on the issue because his deposition shows that "the seized cash was his and that his son would give him (Arnold Grant) some of the money when he asked because the money still belonged to him."  (Doc. # 32 at 6.)  In response to the Government's arguments, the Claimant further argues that "the Government

has not offered *any* evidence to prove that the money seized *was not* the cash owned by [the Claimant]." (*Id.*)

The Claimant's arguments are unavailing. The evidence before the court as to the source of the currency seized consists of the Verified Complaint and the Claimant's deposition. The Verified Complaint states that when the money was seized, Willie Grant told Arwood that the currency totaled $50,000 and was proceeds from a vehicle he recently sold. (Doc. # 1 at 3 ¶ d.) He also told agents that the car was a 1972 Chevrolet Chevelle, that he sold it two weeks before the seizure, and that it was a high school graduation gift from his grandfather. (*Id.* at 3 ¶ e.) After he was taken to the Valley Police Department, Willie Grant told Special Agent Wilson that the same day as the seizure, he picked up the currency from his mother, as she had been receiving payments from the buyer of the vehicle. (*Id.* at 4 ¶¶ e, i.) He transferred it from a backpack to the lining of the suitcase because he had been shot and robbed carrying a backpack in the past. (*Id.* at 4 ¶ i.) He stated that the total amount of currency should be $60,000, consisting of $50,000 in proceeds from the sale of the Chevelle and $10,000 in savings. (*Id.*) The currency in fact totaled $96,370, in small denominations. (*Id.* at 4 ¶ j.) There is no evidence that Willie Grant ever mentioned receiving any of the money from his father. There is also no evidence in the record that Willie Grant has given any other account of the source of the Defendant currency since the seizure and his arrest.

The Claimant's deposition claims that he gave his son $150,000 in 2011, over two years before the seizure, as an investment to help him establish himself. Willie Grant could use the money "[a]t his discretion," and there were no limits on how he could use the money. (Doc. # 32-1 at 8:8–18.) The Claimant testified that it was understood that he could ask for the money, or any amount from it, back at any time, but the only amount he ever actually took back was

about $500. (*Id.* at 23:11–18.) It is the Claimant's position that the $150,000 he gave his son was still the Claimant's money, but that his son was free to use it as he wished, without restriction, and that his son did not need to tell him how or when he spent the money. Also, his son was never obligated to pay the Claimant back.

The burden of establishing standing by a preponderance of the evidence is on the Claimant, and he has not provided the court with any evidence tending to show that the source of the Defendant currency was more likely than not the gift he made to his son in 2011. The evidence illustrates that the "investment" was made with no real restrictions on its use, and on the record before the court, accepting everything the Claimant says as true, nothing submitted by him negates the possibility that Willie Grant could have spent all the money his father gave him (less the small amount the Claimant took back) between 2011 and December of 2013. Based upon the evidence before it, the court finds that the Claimant has not carried his burden to show by a preponderance of the evidence that he has an ownership or possessory interest in the Defendant currency sufficient to establish Article III standing.

This conclusion is consistent with other district court decisions in which a donor claimant of seized property claimed he had standing to challenge a forfeiture. For example, one Western District of New York decision involved the forfeiture of a home. The claimant in the case had conveyed his interest in the property to his son. *United States v. Premises with Bldgs., Appurtenances and Improvements at 500 Del. St., Tonawanda, N.Y.*, 868 F. Supp. 513, 519 (W.D.N.Y. 1994). Four years later, he accepted a transfer of title back to him, knowing that "the property could be forfeited as a result of [his son's] alleged cultivation of marijuana." *Id.* The court found that the claimant was "nothing more than a straw owner" of the defendant property. *Id.* The court held the claimant did not have standing to contest the forfeiture because he had

7

"done nothing to show that he [had] exercised dominion and control" over the defendant property before or after it was transferred back to his name as title owner. *Id.* This was in spite of the fact that the claimant testified by affidavit that the mortgage remained in his name and he could reclaim the home if his son "did not fulfill his obligation to manage the property responsibly." *Id.* at 515.

Similarly, an Eastern District of Pennsylvania decision held that a claimant could not successfully contest a forfeiture where he "had made a gift of [a] vehicle to his son, who had sole possession and exercised dominion and control over it." *United States v. One 1971 Porsche Coupe Auto., Vehicle Identification No. 9111100355*, 364 F. Supp. 745, 748 (E.D. Pa. 1973). The court distinguished the case before it from another in which the claimant forbade his son to drive his car "except for a limited purpose on one occasion." *Id.* Finding that the claimant was only the nominal owner and that his son was the actual owner of the defendant vehicle, the court found that the claimant could not establish an innocent owner defense to forfeiture. *Id.*; *see also United States v. $7,000,000 in U.S. Currency*, 583 F. Supp. 2d 725, 731 (M.D.N.C. 2008) (citing *One 1971 Porsche* for the proposition that a claimant lacked standing to seek the return of defendant currency where he "relinquished any right he may have had to the currency, thereby giving up any right to dominion or control over it").

In this case, the Claimant's testimony does not create a genuine issue of fact as to whether he gave up the right to dominion or control over the money, even assuming that the money seized was the same money he gave. To the contrary, it is established that he did. Coupled with Willie Grant's claim of the source of the Defendant currency, and the failure of the Claimant to submit any evidence that the currency seized was the same money he gave his son, the Claimant has failed to establish that he has proper standing.

For these reasons, the court concludes that the Claimant has not met his threshold requirement to "demonstrate sufficient interest in the property to give him Article III standing." *$38,000.00 in U.S. Currency*, 816 F.2d at 1543.  As a result, the court does not have jurisdiction to consider other issues in the case because there is no "case or controversy" capable of adjudication.

The Government's Motion for Summary Judgment is due to be GRANTED and the Claimant's Cross Motion for Summary Judgment is due to be DENIED.

### V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The United States of America's Motion for Summary Judgment (Doc. # 30) is GRANTED.

2. Claimant Arnold Grant's Cross Motion for Summary Judgment (Doc. # 32) is DENIED.

3. The United States is DIRECTED to submit a proposed Order and Final Judgment consistent with this Order.

DONE this 17th day of August, 2015.

       /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE